*In the matter of the Application of* CHARLES INGRAM *for a Writ of Habeas Corpus.*

(Filed July 18, 1902.)

1. LARCENY—Punishable, Where. Larceny when committed on an Indian reservation in the Territory of Oklahoma, is a crime punishable under the laws of the United States, and the federal side of the district court having jurisdiction over such reservation is the proper forum in which to try and punish such offense.

2. "INDIAN COUNTRY" DEFINED. The Osage Indian reservation in Oklahoma, is "Indian Country" within the meaning of the United States Statutes, section 445, which extends to the "Indian Country" the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, and as interpreted by Justice Brewer in the case of In re Wilson, 140 U. S. 575.

3. DISTRICT COURT OF PAWNEE COUNTY—Jurisdiction. The district court of Pawnee county, sitting as a United States court, has power and jurisdiction to punish a white person for the crime of larceny committed on the Osage Indian reservation in Oklahoma.

(Syllabus by the Court.)

*Original Proceeding in Habeas Corpus.*

*Buckner & Son, for petitioner.*

*J. C. Robberts, Attorney General,* per contra.

Opinion of the court by

BURFORD, C. J.:   The petitioner, Charles Ingram, was convicted in the district court of Pawnee county sitting as a United States court, for the crime of larceny, committed in the Osage Indian reservation, and sentenced to imprisonment for one year in the federal jail, at Guthrie.   He now applies for a writ of *habeas corpus* to secure his discharge.

The 'contention of the petitioner is that the court which sentenced him had no jurisdiction of the offense committed in the Osage Indian reservation.   In support of this position we are referred to the case of the *United States v. Pridgeon,* 153 U. S. 48.   The only question decided in the Pridgeon case was that the crime of horse stealing, which had been made a special crime when committed in the Indian Territory, was not, after the creation of the Territory of Oklahoma, any longer a crime against the United States, in that portion of the Indian Territory which was by the organic act  embraced  within  the borders of Oklahoma.   Horse stealing was not made a crime generally against the United States, but only when committed in the Indian Territory, and when any portion of the country embraced within the boundaries of Indian Territory ceased to be a portion of said Indian Territory, then the law creating such crime was withdrawn from such portion as ceased to compose part of the Indian Territory.

But the withdrawal of an Indian reservation from the Indian Territory does not make it any less,  or  change  its character from "Indian country," as contemplated by sec. 2145, R. S. U. S., 1878, which extends to the "Indian country" the general laws of the United States as to the punishment of crimes in any place within the sole and exclusive jurisdiction of th United States, the punishment of which is not otherwise provided.   The term "Indian country," as used in this act, has been frequently construed by the supreme court of the United States.   (*In re Wilson,* 140 U. S. 575, and cases cited.)

The  Osage  Indian reservation in Oklahoma is Indian country, as such term has been defined in the cases above referred to.

We reviewed all the questions presented by petitioner in the case of *Goodson v. The United States,* 7 Okla. 117, and that case is decisive of the question presented in the case under consideration. The organic act made the Osage country a part of Oklahoma territory, and gave the courts of Oklahoma exclusive and original jurisdiction over all crimes and offenses committed upon said reservation, and authorized the supreme court of Oklahoma to attach said reservation to some one of the organized counties for judicial purposes. This has been done, but the reservation has never been opened to settlement; the Indian titles have not been divested; the Indians still occupy their tribal relations and government, and are under the control and supervision of an Indian agent. There is no county, township or local government extended over the reservation; but it is as much "Indian country" as an Indian reservation can be at any other place within the jurisdiction of the United States. The courts of Oklahoma, territorial and federal, have jurisdiction there the same as elsewhere in Indian reservations.

The crime of larceny is made punishable by the laws of the United States when committed at any place within the exclusive jurisdiction of the United States. And, likewise, when committed at any place in the "Indian country." The district court of Pawnee county, when exercising the jurisdiction of the United States court, had jurisdiction of the petitioner and the crime with which he was charged, and he is not illegally imprisoned.

The writ is denied at the costs of the petitioner, and the prisoner remanded to the custody of the United States marshal.

Irwin, J., absent; all the other Justices concurring.