## THE UNITED STATES OF AMERICA *vs.* ICHITARO ISHIBASHYI.

### March 26, 1910.

*Federal courts—Practice:* When one member of this court has ruled upon a point of law after full consideration, his ruling should be allowed to stand until reversed by a higher court unless strong reason for reconsidering it be shown.

*Edmunds-Tucker act applicable in this Territory:* The Edmunds-Tucker act is not inapplicable to this Territory, and was, therefore, extended to this Territory by the organic act.

*Criminal Law:* Demurrer to indictment. (Indictment under sec. 3, act of March 3, 1887.)

*W. T. Rawlins,* Assistant U. S. Attorney, for the United States.

*W. B. Lymer,* Attorney for Defendant.

ROBERTSON, J. This case presents an indictment containing four counts, two of which charge the defendant with the crime of adultery, and two with that of fornication, to which the de-

fendant demurs on the ground that "this court is without juris-
diction to try the said offenses or any of them charged under
said indictment for the reason that said act of Congress of
March 3, 1887, under which said indictment is laid, was not,
at the time the offense charged in said indictment are al-
leged to have been committed, nor at the time said indictment
was returned, nor at any time whatsoever, in force within said
Territory of Hawaii."

The date alleged in the indictment is July 31st, 1908, the
indictment having been found on November 2nd, 1909.

Counsel for defendant, in an able brief, contends that "the
legislation which began with the act of July 1, 1862, amended
thereafter by the act of March 22, 1882, and still later by the
act of March 3, 1887, was legislation directed solely and en-
tirely against polygamous practices in those Territories of the
United States wherein Mormonism had already gained or was
fast gaining a foothold"; also, that, it cannot be said that Con-
gress, in enacting the act of March 3, 1887, "intended the act
to be of so prospective an effect as to apply to all sections of
territory which at any future time should come within the ex-
clusive jurisdiction of the United States," and that "as a mere
matter of legislative intent, the act of March 3, 1887, was in-
herently inapplicable to the Territory of Hawaii." In this con-
nection he cites *United States v. Crawford,* 6 Mackey, 319.

It is also argued that the organic act of Hawaii which con-
tinued in force the pre-existing laws of Hawaii relating to
adultery, bigamy, etc., rendered the general federal legisla-
tion on these subjects locally inapplicable within the meaning
of section 5 of the organic act. In support of this contention
counsel refers with much confidence to the case of *United
States v. Pridgeon,* 153 U. S. 48, and to the concurring opinion
of Mr. Justice Ballou in the case of *Territory v. Martin,* 19
Haw. 201, 210.

And, finally, it is claimed that while it is familiar law that
one and the same act may constitute an offense against both

the territorial and federal statutes, this is not true of offenses of "so local a nature" as crimes against morality.

Counsel concludes that "the reason for all this is that the earlier general statutes are superseded by subsequent, special, local legislation."

The question presented by the demurrer in this case is the same one that Judge Dole, of this court, answered in the case of *United States v. Lee Sa Kee,* decided on January 4th, 1908, (Ante p. 262), from which I quote as follows:

"Although the act of 1862 (12 U. S. Stat. L. 501) was aimed at the practice of polygamy in the Territories and other places over which the United States has exclusive jurisdiction, and with certain acts of the legislature of Utah favoring polygamy, and was amended by the act of 1882 (22 U. S. Stat. L. 30), also aimed at polygamy in the Territories and other places over which the United States has exclusive jurisdiction, yet the act of 1887 which amends the act of 1882 is a more comprehensive statute containing enactments applicable to the Territory of Utah and the 'so-called State of Deseret,' and general enactments appertaining to the Territories of the United States. It deals not only with polygamy but also with the cognate offenses of adultery, fornication and incest. The act of 1887 departs from the special object of the two preceding acts, and clearly adds to their scope, intending by its words to deal with the subject of marriage more broadly by punishing all offenses inconsistent with the sanctity of the marriage relation. 'All possible effect must be given to every clause, section and word of the statute.' *United States v. Fisher,* 109 U. S. 143, 145. By the act of 1887 adultery is made a crime against the United States in the Territories and other places over which the United States has exclusive jurisdiction. *France v. Connor,* 27 Pac. 569: 161 U. S. 65, 67; *United States v. Baum,* 74 Fed. Rep. 43, 44. The case of *United States v. Crawford,* 6 Mackey 319, cited by counsel for the defendant, decides that the legislation under consideration does not apply to the District of Columbia and gives some reasons therefor which are not applicable to the Territory of Hawaii. I do not find, however, that this authority affects the position of the cases cited above."

The policy which should generally guide a judge of this court

in passing upon questions which have already been decided in this court was well stated by Judge Woodruff in the case of *United States v. Hoshi et al.,* decided November 17, 1909, (Ante p. 439), as "the propriety and necessity of repose whereby, when one member of the court has ruled upon a point of law after full consideration, his ruling should be allowed to stand until reversed by a higher court, or until exceptionally strong occasion for reconsidering it has been adduced. Otherwise the people and the attorneys practicing before the bar would be in a continual state of uncertainty concerning the law."

In the case at bar it is earnestly contended that the decision of the Supreme Court in the *Pridgeon* case is directly in point and should be regarded as controlling; and that the conclusion arrived at in the *Lee Sa Kee* case was wrong; and it is pointed out that the former case was not referred to in the opinion in the latter case, and, probably, was not cited in argument.

In view of this, I have decided to examine the question.

*United States v. Crawford,* supra, was satisfactorily disposed of in the *Lee Sa Kee* case.

In *United States v. Pridgeon,* the defendant was not charged with having committed the alleged offense, horse stealing, in the Territory of Oklahoma, as has been assumed, but "at and within that part of the Territory attached for judicial purposes to Logan County as aforesaid, which said part of said Territory was then and there Indian country, and a place and district of country then and there *under the sole and exclusive jurisdiction of the United States of America.*"

As to this, the court said:

" This averment in the indictment has reference alone to the Cherokee Outlet, for the Outlet was the only Indian country not included in Oklahoma Territory, embraced within the order of the Supreme Court, and was the only place and district of country attached to Logan County for judicial purposes that was under the sole and exclusive jurisdiction of the United States. The indictment may, therefore, be fairly construed as charging the offense as having been committed in that portion

of the Cherokee Outlet attached to Logan County for judicial purposes."

And, as pointed out in the case of *Brown v. United States,* 146 Fed. 975, " The establishment of the territorial government [of Oklahoma] did not take from these reservations their status as Indian country or remove them from the plenary authority of the United States."

B aring this in mind, together with the further fact that the accused in the *Pridgeon* case was not prosecuted under a penal statute applying to the Territories generally, but was indicted under a statute passed on February 15, 1888, which denounced horse stealing only in "the Indian territory," the ruling of the Supreme Court that horse stealing in Oklahoma, after May 2, 1890, when that Territory was organized and provided with a complete criminal code, was not punishable under the act of February 15th, 1888, may be readily understood and appreciated. When Oklahoma Territory came into existence the country included in it ceased to be Indian territory and the laws relating exclusively to Indian territory ceased to apply to the newly organized Territory of Oklahoma.

Mr. Justice Ballou was mistaken when he said, (19 Haw. 213) referring to the *Pridgeon* case, that "In the Oklahoma case the Supreme Court held, answering a certified question, that horse stealing *in the Indian country* during the period mentioned was not a crime against the United States, the previous federal legislation having been superseded by the corresponding provision of the Nebraska code."

What the Supreme Court said was this:

" We are, therefore, clearly of opinion that the act of February 15, 1888, was not in force *in the Territory of Oklahoma* on November 4 and 12, 1890, but had been superseded by the provisions of section 11 of the act of May 2, 1890, adopting the criminal code of Nebraska as a provisional code for the Territory, and it follows that the first question certified by the Circuit Court of Appeals must be answered in the negative."

The court also held, distinctly, that, the place where the of-

fense was alleged to have been committed, being within the "Indian country" was within the jurisdiction of the United States court, and was punishable under the act of February 15, 1888.

A careful examination of that case will show that there is nothing inconsistent between it and the decision of this court in the *Lee Sa Kee* case. See *In re Ingram,* 12 Okla. 54, and *Goodson v. United States,* 7 Okla. 117.

The organic act of Hawaii extended to this Territory all the laws of the United States (except sections 1850 and 1890 of the Revised Statutes) "which are not locally inapplicable."

The fact that Congress, at the same time, continued in force the laws of Hawaii relating to the sexual offenses, did not, in my opinion, render the Edmunds-Tucker act inapplicable. A statute may be unnecessary or superfluous without being inapplicable. Nor does the fact that Hawaii was not a Territory of the United States, at the time of the enactment of the legislation referred to, afford a reason for holding it inapplicable to this Territory, as, by the very terms of that legislation it was to apply to the Territories generally, and it was not expressly excepted from application here by any provision of the act organizing the Territory of Hawaii.

I am satisfied that the *Lee Sa Kee* case was correctly decided.

The demurrer is overruled.